800 So.2d 1055 (2001)
Jennifer Renee JOHNSON, Individually and as Tutrix of the Estate the Minor Child, Cain Anthony LaFauci, III,
v.
Cary HERNANDEZ, M.D., Susana Q. Lim, and Louisiana Medical Mutual Insurance Company.
No. 01-CA-575.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2001.
Writ Denied December 14, 2001.
David L. Haik, Metairie, LA, Attorney for Plaintiffs/Appellants.
Katherine A. Pavy, Judice & Adley, Lafayette, LA, Attorney for Defendants/Appellees, Cary Hernandez, M.D. and Louisiana Medical Mutual Insurance Company.
Nicholas Gachassin, Jr., Julie Fournet Hoffpauir, Lafayette, LA, Attorneys for Defendant/Appellee, Susana Q. Lim, M.D.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
In this medical malpractice case, the plaintiffs have appealed the trial court's grant of the defendants' Motions for Summary Judgment. For the reasons which follow, we affirm the judgment of the trial court.

*1056 FACTS:
On the morning of May 14, 1997, two year old Cain LaFauci was found by his grandmother unconscious in a swimming pool. Cardiopulmonary resuscitation was began immediately by a neighbor and continued by a home health nurse who was visiting a neighbor. An ambulance was summoned and arrived on the scene at 8:48 a.m. Emergency medical personnel on the ambulance continued resuscitation, which included endotracheal intubation, the starting of intravenous fluids, and the administration of epinephrine.
The ambulance arrived at Lafayette General Medical Center at 9:11 a.m. Dr. Cary Hernandez was working in the emergency room and assumed Cain's care. Aggressive resuscitative measures continued, which included the administration of numerous intravenous and intracardiac drugs and defibrillation. At 9:44 a.m. Dr. Hernandez made the decision to discontinue resuscitation and the medical record states "patient expired." However within seconds, an unnamed hospital personnel palpated a carotid pulse and the cardiac monitor showed a viable rhythm. Shortly thereafter, Cain's blood pressure returned. His condition was stabilized and he was taken to the Pediatric Intensive Care Unit. Cain was transferred to Tulane Medical Center and treated by several physicians. He was later transferred to Texas where he was treated by other physicians, but unfortunately, as a result of this near drowning experience, he suffered severe neurological damage. He remains in a comatose state.
Cain's parents filed a malpractice suit against Dr. Hernandez and Dr. Susana Lim, a pediatrician who was consulted to assist in the resuscitation. Plaintiffs filed Motions for Summary Judgment against both physicians on the issue of failure to obtain informed consent and breach of the standard of care. Both physicians also filed Motions for Summary Judgment claiming plaintiffs would be unable to meet their burden of proof at trial. Following a hearing on the motions, the trial court granted the defendants' Motions for Summary Judgment and denied plaintiffs' Motions for Summary Judgment. It is from this judgment that plaintiffs have appealed.

DISCUSSION:
In their Petition for Damages, the plaintiffs alleged that "the standard of care in the community was not met by Dr. Hernandez's prolonged attempt at resuscitation and later resuscitation of Cain Anthony LaFauci, who Dr. Hernandez should have known would be completely comatose having profound if not total brain damage upon revival." With regards to Dr. Lim, the plaintiffs allege "the standard of care in the community was not met by Dr. Lim's prolonged attempt at resuscitating and later resuscitation of Cain Anthony LaFauci who Dr. Lim knew would be completely comatose having severe if not total brain damage upon revival." The plaintiffs also alleged "Dr. Lim failed to warn Dr. Hernandez as to the effects of lack of oxygen to the LaFauci child during the emergency room treatment." The plaintiffs further alleged that Dr. Hernandez and Lim "committed an additional act of fault in their failure to obtain informed consent from the ascendant of Cain Anthony LaFauci prior to reviving him under circumstances in which they knew or should have known that in the reasonable exercise of medical judgment he would be profoundly permanently neurologically impaired."
In their Motion for Summary Judgment, Drs. Hernandez and Lim argue that the plaintiffs cannot prevail on their allegations of malpractice because they do not have any expert testimony to support their *1057 allegations. The defendants point out that this suit was filed in January of 1999. After the case was set for trial plaintiffs listed two experts on their witness list, Dr. Olugbena Akingbola and Dr. Alvin Prause. Both parties have accepted Dr. Akingbola as an expert in pediatric critical care. Dr. Akingbola's deposition was attached to defendants' motion. In his deposition, Dr. Akingbola testified that he had no criticism of the resuscitation performed by Drs. Hernandez and Lim and that the care rendered by these physicians was appropriate. Dr. Prause's deposition was also attached to defendants' motions. Dr. Prause testified that he had not reviewed the medical records from Lafayette General Medical Center and was not in a position to comment on the care rendered at that facility.
In their Motions for Summary Judgment, the physicians also argue plaintiffs cannot carry their burden of proving the defendants were negligent for failing to obtain informed consent from Cain's grandmother. Defendants argue that they did not have to obtain informed consent because there was a medical emergency and taking the time to obtain consent would have been detrimental to the treatment of the patient. Defendants cite to the deposition of Dr. Akingbola who testified that a medical emergency existed during the entire resuscitation. Dr. Akingbola further testified that there are studies, which show that one-third of the children who experience near drowning accidents fully recover. He explained that a physician cannot determine which child will recover and which will have neurological injuries in the emergency room because the extent of neurological injuries, if any, will not be known until the child has been evaluated for 24 to 48 hours after resuscitation.
The opinion of the medical review panel was also attached to defendants' Motions for Summary Judgment. The medical review panel found that the evidence did not support the conclusion that the defendant physicians failed to meet the applicable standard of care. The panel issued reasons for its findings stating:
1) No one knew how long the patient was in the pool. In a resuscitation event, the benefit of doubt with regard to how long the patient was apneic and pulseless should go to the patient. The resuscitation began immediately from when the child was recovered from the pool thereby increasing the probability that the child would survive.
2) Fixed and dilated pupils do not mean that the patient cannot survive. Continued resuscitation was done properly and continuously by the Acadian paramedics and continued after he was brought to the emergency department under the guidance of Dr. Hernandez and his staff.
3) Resuscitation was continued properly resulting in return of spontaneous pulses which mandated further resuscitation maneuvers.
4) Consent is implied in an emergency situation which existed in this case.
5) Dr. Hernandez, Dr. Lim and Lafayette General Medical Center met the standard of care in performing the resuscitation and continued stabilization of this patient.
In opposition to defendants' Motions for Summary Judgment, the plaintiffs argue they have expert testimony. They contend the defendants themselves stated the standard of care and their actions show they did not comply with their own standard. In their motion, plaintiffs state the malpractice was "the continued attempts to resuscitate Cain after Hernandez had pronounced *1058 him dead at 9:44 a.m., attempts which resulted in Cain's sort of revival, to a condition chronically comatose ..." Plaintiff then points to the deposition testimony of Dr. Hernandez who testified that in an emergency resuscitation of a patient "we do everything possible for the first 30 minutes." Dr. Hernandez continued stating "At 29 minutes we made a reassessment with the pediatrician present and we felt that we, you know, had done as much as we could that we should stop." Dr. Hernandez then explained that in this case it had been 30 minutes without a "sustained blood pressure and pulse in the emergency room, just with occasional return of a pulse, and we thought at this time we should stop-probably stop the resuscitation." Dr. Hernandez then explained within moments "whether or not it was five seconds or 30 seconds, you know, the child had a spontaneous return of a sinus tachycardia, which I think it was a junctional tachycardia with a good pulse, and so, we went ahead and continued the resuscitation ..." Plaintiffs then point to the testimony of Dr. Lim[1] who stated that she would have stopped the resuscitation after 30 minutes of no heart rate and pulse. Plaintiffs argue that this testimony is sufficient to prevail on the issues of the applicable standard of care, the breach of the standard of care, and the causation of Cain's current state.
As to the issue of the defendants' alleged failure to obtain informed consent, the plaintiffs' argue that the medical care given to Cain immediately following his arrival at 9:15 a.m. may have been an emergency, but any emergency which existed ended when Dr. Hernandez left the treatment room sometime prior to 9:44 a.m. to speak with Lisa Johnson in the family room. Plaintiffs point to the testimony of Ms. Johnson who testified that Dr. Hernandez came into the family room and told her Cain was dead. A sister from the hospital took her to the chapel to pray. Mrs. Johnson testified that while she was in the chapel an unknown hospital personnel came to get her and took her to see Cain in the Intensive Care Unit. She testified that she was very confused because she had understood that Cain was dead.
In response, the defendant submitted the deposition testimony of Lisa Johnson's friend, Glenn Vercher. Mr. Vercher testified that he was present when Dr. Hernandez spoke to Lisa Johnson. He did not recall Dr. Hernandez stating that Cain had died or that resuscitative efforts had been stopped. Mr. Vercher recalled Dr. Hernandez saying they were still working on Cain and Ms. Johnson begged him "don't let my baby die." Defendants also submitted an affidavit from Sister Raye of the Pastoral Care Department of the hospital. Sister Raye stated that she was present when Dr. Hernandez spoke to Ms. Johnson and at no time did Dr. Hernandez state that Cain had died.
Louisiana Code of Civil Procedure Article 966 explains that summary judgment procedure is "designed to secure the just, speedy, and inexpensive determination of actions." It is favored and shall be construed to accomplish these ends. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue of material fact and *1059 mover is entitled to judgment as a matter of law. The article further provides that if movant will not bear the burden of proof at trial, movant's burden does not require him to negate all essential elements of the adverse party's claim. Rather, he need only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim. Finally, the statute provides that if the adverse party fails to produce factual support to show that he will be able to satisfy his burden of proof at trial, there is no genuine issue of material fact. It is well settled that appellate courts review summary judgments de novo, using the same criteria applied by the trial court to determine whether summary judgment is appropriate. Fleming v. Hilton Hotels Corp., 99-1996 (La.App. 4 Cir. 7/12/00), 774 So.2d 174. Any decision as to the propriety of a grant of the motion must be made with reference to the substantive law applicable to the case. Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La. App. 5 Cir.1988).
Pursuant to LSA R.S. 9:2794, in order to prevail at trial plaintiffs must prove the applicable standard of care, a breach of that standard, and causation of injuries due to the breach. To defeat defendants' Motions for Summary Judgment, plaintiffs must come forward with sufficient evidence to show they can meet their burden of proof at trial. In support of their Motions for Summary Judgment, Drs. Hernandez and Lim have attached the deposition testimony of Dr. Akingbola, a physician accepted by both parties as an expert in pediatric critical care. Dr. Akingbola testified that after reviewing the medical records and medical literature, he would not have advised the resuscitation be called off. Dr. Akingbola went on to explain that during the resuscitation, no one can determine the chances of surviving neurologically intact and pointed to medical literature, which documents a complete recovery in some patients. Dr. Akingbola testified unequivocally that he had no criticisms of the resuscitation performed by Drs. Hernandez and Lim.
Plaintiffs argue that they have expert testimony from the defendants themselves defining the standard of care. Plaintiffs contend that both Dr. Hernandez and Dr. Lim testified that the standard is to do everything possible to resuscitate the patient for the first thirty minutes and if there is no return of pulse or blood pressure, then the resuscitation efforts should be stopped. Plaintiffs argue that because the defendants continued resuscitation after thirty minutes elapsed, they breached the standard of care. Plaintiffs further argue that once Dr. Hernandez stopped the resuscitation, it should have remained stopped and that the defendants continued resuscitation after Cain was "pronounced dead" resulted in his chronic comatose condition. Plaintiffs do not support their position with any evidence other than isolated excerpts from the defendants' depositions.
As to the issue of informed consent, Drs. Hernandez and Lim argue that Cain arrived at the hospital by ambulance unaccompanied by anyone to give consent to treatment. Relying on R.S. 40:1299.54, they contend in treating an emergency such as this, consent is implied. The defendants argue that the emergency continued until the time Cain was stabilized and transferred to the Intensive Care Unit.
In support of their position the defendants point to the testimony of Dr. Akingbola. Dr. Akingbola testified that an emergency situation existed when Cain came into the emergency room and the emergency continued until after 9:44 a.m. Defendants also point to the medical review *1060 panel's finding that consent was implied in the emergency situation that existed in this case. Defendants attached a portion of the deposition of Glenn Vercher to their motion. In this excerpt, Mr. Vercher testified that when Dr. Hernandez came to speak to Ms. Johnson, she begged "don't let my baby die."
The plaintiffs acknowledge that there was a medical emergency negating the need for written, oral, or informed consent at the time Cain arrived at Lafayette General. However, plaintiffs take the position that any emergency, which existed when Cain arrived at the hospital, ended when Ms. Johnson arrived and Dr. Hernandez left Cain's bedside to speak to her. Plaintiffs further contend that Dr. Hernandez knew that Cain did not have any chance of surviving without brain damage given the fact that Dr. Hernandez "pronounced Cain dead" at 9:44 a.m.
At trial the plaintiffs have the burden of proving that the defendants breached the standard of care. Once the defendants filed their Motions for Summary Judgment supported by the testimony of Dr. Akingbola stating that the defendants resuscitation of Cain was appropriate and consent was implied, and the opinion and reasons of the medical review panel stating that the resuscitation was appropriate and consent was implied, the burden shifted to plaintiffs to put forth evidence to show they could carry their burden of proof at trial. Plaintiffs have failed to do so. While we recognize that there are limited circumstances in which expert testimony is not necessary to establish the standard of care, the facts of this case do require expert testimony. The issue of when resuscitation efforts should be stopped on a three-year-old near drowning victim, as well as whether resuscitation efforts should have continued after they were stopped, is a complex medical issue requiring expert testimony to establish the standard of care and whether there was a breach of the standard of care. Plaintiffs position that the resuscitative efforts should have been discontinued after 30 minutes because there was no pulse is contrary to the medical records. The medical records indicate that Cain had a carotid pulse, which was palpable at 9:17 a.m. and a pulse of 46 at 9:21 a.m. Thus the records do not indicate that there was a thirty minute period in the emergency room without a pulse. We find plaintiffs' position that resuscitative efforts should not have been resumed on this three-year-old child after he exhibited a spontaneous pulse at 9:44 a.m. is contrary to the expert opinions presented in this case.
In their Motions for Summary Judgment, the defendants argue consent was implied in this emergency. Plaintiffs have produced no evidence to support their position that the emergency ceased when Dr. Hernandez came to speak to Ms. Johnson. Plaintiff argues that Dr. Hernandez should have advised Ms. Johnson of the possibility of brain damage and then obtained informed consent to continue resuscitation. This argument ignores the medical testimony that the degree of neurological brain damage, if any, could not be accurately assessed at that time. The argument also ignores the testimony of Mr. Vercher who testified that Ms. Johnson begged Dr. Hernandez not to let her baby die and the testimony of the paramedic who treated Cain on the scene also indicated that Ms. Johnson repeatedly lunged at her stating, "You can't let him die."
For the foregoing reasons, the Summary Judgments granted in favor of Dr. Cary Hernandez and Dr. Susana Lim are affirmed. The affirmation of the granting of defendants' Motions for Summary Judgment *1061 makes a discussion of plaintiff's Motions for Summary Judgment moot.
AFFIRMED.
NOTES
[1] Dr. Lim's deposition was not taken in this malpractice proceeding, rather it was taken in the lawsuit filed by the plaintiffs against the owner of the pool. In response to defendants' Motion in Limine, the trial judge ruled that this deposition testimony would be inadmissible at trial. It is discussed herein because it was attached to plaintiffs' Motion for Summary Judgment.